UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | Civil Action Nos.: |
| DENNIS HAGUE AND PANDORA HAGUE (as next ) | |
| friend for) JARED HAGUE, ) | 10-30138-MAP |
| ) | |
| NATHAN CURTIN, ) | 10-30142-MAP |
| ) | |
| KELLY D'ASTOUS (as next friend for) ) | |
| TIMOTHY D'ASTOUS, ) | 10-30143-MAP |
| ) | |
| PATRICK DOWD and LORRAINE DOWD (as ) | |
| next friend for) RYAN DOWD, ) | 10-30144-MAP |
| Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| MASSACHUSETTS DEPARTMENT ) | |
| OF ELEMENTARY AND SECONDARY ) | |
| EDUCATION, MITCHELL CHESTER, JEFFERY ) | |
| NELHAUS, PAMELA KENYON, JEFFERY ) | |
| WHEELER, PAUL REVILLE, JOSEPH DOW, ) | |
| CITY OF WESTFIELD, HILARY WEISGERBER, ) | |
| THOMAS MCDOWELL, MICHAEL R. BOULANGER, ) | |
| MARY ANN CLELAND, LAURA MALONEY, ) | |
| KEVIN SULLIVAN, ROBERT J. KAPINOS, ) | |
| MARY BETH OGULEWICZ SACCO, HEATHER ) | |
| SULLIVAN, JOHN YORK, JAMES J. WAGNER, ) | |
| STEVEN PIPPIN, and SHIRLEY ALVIRA, ) | |
| Defendants ) | |

<u>REPORT AND RECOMMENDATION WITH REGARD TO</u>

## DEFENDANTS' MOTIONS TO DISMISS

### July 26, 2011

NEIMAN, U.S.M.J.

In separate actions, Plaintiffs - - four students and, in three instances, their parents acting as next friends - - allege various federal and state law claims in relation to the closing of a program at the Westfield Vocational Technical High School ("WVS"). Plaintiffs are (1) Dennis and Pandora Hague as next friend for J. Hague ("Hague"), (2) Nathan Curtin, (3) Kelly D'Astous as next friend for Timothy D'Astous ("D'Astous"), and (4) Patrick and Lorraine Dowd as next friends for Ryan Dowd ("Dowd"). The particulars of Plaintiffs' claims will be described below.

Defendants comprise two groups: first, the Massachusetts Department of Elementary and Secondary Education and certain of its individually named employees in their official capacities, Mitchell Chester as the Commissioner, Jeffery Nelhaus as the Deputy Commissioner and Acting Commissioner, Pamela Kenyon as a Quality Assurance Services Department employee, Jeffery Wheeler as the Director of Career and Technical Education, Paul Reville as the Chairperson of Massachusetts Department of Education, and Joseph Dow as the Supervisor of Program Quality Assurance Services Department (together, the "DESE Defendants"); second, the City of Westfield along with individuals employed by the city acting in their official and, in some cases, personal capacities, Hilary Weisgerber as Director of WVS and in her personal capacity, Thomas McDowell as Superintendent of the Westfield Public Schools and in his personal capacity, Michael Boulanger as Chairman of the Westfield

2

School Committee, Mary Ann Cleland, Laura Maloney, Kevin Sullivan, Robert Kapinos, Mary Beth Ogulewicz Sacco and Heather Sullivan in their official capacities as members of the Westfield School Committee, John York as Placement Director for WVS, James Wagner as Assistant Director of WVS, Steven Pippin as the Personnel Director of the Westfield Vocational Technical High School, and Shirley Alvira as current Superintendent of the Westfield Public Schools (together, the "Municipal Defendants").

Presently, the Municipal Defendants have moved to dismiss each action pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56. In separate motions, the DESE Defendants have moved to dismiss each action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3). Although the actions themselves remain separate, the motions have been consolidated by agreement of the parties. These motions have been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).

Plaintiffs assert a gallimaufry of federal and state claims, although it is not at all clear as to which defendant particular claims are directed. The first eleven claims, which all Plaintiffs pursue, are: Count One, 42 U.S.C. § 1983, violation of due process rights; Count Two, 42 U.S.C. § 1983, violation of free speech and assembly rights; Count Three, 42 U.S.C. § 1983, violation of property interests in education; Count Four, Mass. Gen. Laws ch. 12 § 11H and § 11I the Massachusetts Civil Rights Act ("MCRA"); Count Five, breach of contract; Count Six, promissory estoppel; Count Seven, civil

conspiracy; Count Eight, intentional misrepresentation; Count Nine, negligent misrepresentation; Count Ten, educational malpractice; and Count Eleven, false imprisonment. Hague and Dowd, in their complaints, also assert as Count Twelve claims under the Individuals with Disabilities Education Act ("IDEA"), 42 U.S.C. § 1440 *et seq.* Curtin too asserts an additional count, labeled Count Twelve in his complaint, for assault and battery.

For the reasons described below, the court will recommend that the DESE Defendants' motions to dismiss all counts for lack of subject matter jurisdiction be allowed. In addition, the court will recommend that the Municipal Defendants' motions to dismiss be allowed in part and denied in part.

## I. FACTUAL BACKGROUND

The following facts come primarily from Curtin's complaint, supplemented by factual information from the other complaints as appropriate. In the main, the allegations relate to the first three federal claims, Counts One through Three, which counts are indistinguishable in the various complaints, as well as to Count Twelve, added by Hague and Dowd and asserting claims under the IDEA. The facts are stated in a light most favorable to Plaintiffs. Additional facts pertaining to state law claims (Counts Four through Eleven and, in Curtin's complaint, Count Twelve) are, in the court's view, largely irrelevant for present purposes.

Plaintiffs are or were WVS students, some of whom were "recruited" by Hilary Weisgerber ("Weisgerber"), Director of WVS (Hague Compl. ¶ 13), and all of whom

participated in the school's Heating Ventilation and Air Conditioning ("HVAC") program,

(Curtin Compl. ¶ 15.)  In September of 2007, when Curtin was a senior and in his final

year of the HVAC program, WVS held an open house at which parents expressed

concern over rumors that the HVAC program would be closing.  (*Id.* at ¶ 16.)  During

the open house, Plaintiffs found Weisgerber to be "uncooperative, hostile, and

uncaring" when responding to their concerns.  (*Id.* at ¶ 17.)  That same month, WVS

suspended the HVAC program teacher and replaced him with an unlicensed,

uncertified, and untrained substitute, who presided over the program for the remainder

of the school year.  (*Id.* at ¶¶ 18-19.)

In October of 2007, the Westfield School Committee held a meeting where the

termination of the HVAC program was discussed with input from "numerous HVAC

business owners and managers . . . and graduates of the program."  (*Id.* at ¶ 28.)

Plaintiffs allege that, as HVAC parents and students, they were met with "threats,

coercion and intimidation" at the meeting and that Westfield police officers "had been

hired to essentially prohibit the parents from entering the room," a room filled with, from

Plaintiffs' perspective,  Weisgerber's supporters.  (*Id.* at ¶ 27.)  Parents and supporters

of the program were only allowed to enter the meeting one at a time to make a

statement.  (*Id.*)  At the end of the meeting, Thomas McDowell, Superintendent of the

Westfield Public Schools, read a prepared statement explaining the HVAC program

closure procedures, which had been approved by the Massachusetts Board of

Education on October 3, 2007.  (*Id.* at ¶ 29.)  In February of 2008, however, the

Massachusetts Board of Education notified the City of Westfield that corrective action

was required to address deficiencies in the closure plan, including the lack of a certified teacher then overseeing the students. (*Id.* at ¶¶ 30-31.) Plaintiffs allege that the lack of a certified teacher effectively deprived them of a meaningful year. (*Id.* at ¶ 32.)

Plaintiffs also allege the following facts, which apparently came to light after the closure of the program: the principal of Pathfinder High School had offered to take all of the existing students in the HVAC program into Pathfinder's program but the offer was never conveyed to Plaintiffs; WVS, specifically Weisgerber, made false statements regarding the former HVAC teacher, Stephen Estock, to justify closing the program; WVS provided false information to DESE regarding notice and meetings with parents, leading them to believe there had been parental involvement and agreement with the decision to close the program; and the Westfield Public Schools paid for the tuition of several students to attend Springfield Technical Community College's HVAC program but did not do the same for Plaintiffs. (*Id.* at ¶ 33.)

## II. STANDARD OF REVIEW

Faced with a Rule 12(b)(1) motion to dismiss, a plaintiff has the burden of establishing that subject matter jurisdiction exists through competent proof. *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir. 1982). In general, such a motion is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *See Cintron-Luna v. Roman-Bultron*, 668 F.Supp.2d 315, 316 (D.P.R. 2009) (citing *Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27 (1st Cir. 1994)). Thus, while a complaint requires only "a short and plain statement of the claim showing that the

pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), a plaintiff still must allege enough

facts so that the claim is "plausible on its face," *Bell Atlantic v. Twombly*, 550 U.S. 544,

555-56, 570 (2007), *i.e.*, the factual content pled should "allow[] the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal v.

Ashcroft*, 129 S. Ct. 1937, 1949 (2009). In drawing such inferences, a court need not

credit "bald assertions, unsupportable conclusions, and opprobrious epithets."

*Campagna v. Massachusetts Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003)

(quoting *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989)).

### III. Discussion

As described, Plaintiffs variously set forth a total of thirteen counts against

Defendants, three arising under 42 U.S.C. § 1983 ("Section 1983") for constitutional

violations, one arising under a federal statute, and nine arising under state law. For

purposes of the present motions, the court will concentrate its analysis on the three

federal constitutional claims, namely, the claimed violations of due process (Count

One), free speech and assembly (Count Two), and property interests in education

(Count Three), the IDEA claim (Count Twelve) raised by Hague and Dowd, and the

claim under the MCRA (Count Four). The court will first address the DESE Defendants'

motions and then the Municipal Defendants' motions.

A. The DESE Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and
   12(h)(3)

Given Plaintiffs' concession that "the action against DESE is barred by the

Eleventh Amendment unless immunity is abrogated or the state has waived immunity,"

the DESE Defendants' motions to dismiss Plaintiffs' original complaints have not been contested. (Pls.' Resp. & Opp. to DESE's Mot. to Dismiss (Pls.' Resp. to DESE) at 1.) However, because the court has allowed Plaintiffs' subsequent motions to amend their complaints, it will consider, as agreed by the parties, the DESE Defendants' motions to dismiss as they apply to the complaints as amended. The court will first address whether those complaints, by adding individual defendants, have effectively overcome the DESE Defendants' assertion of sovereign immunity. The court will then consider whether the addition of a new count under the IDEA vests jurisdiction in this forum for the two plaintiffs who have raised that claim.

### 1. The Individual State Employees

It is well established that the Eleventh Amendment bars actions by private individuals against a state or its agencies in federal court absent a waiver of sovereign immunity by the state or clear Congressional intent to abrogate such immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). The Supreme Court has made it equally clear that, based on a lack of express Congressional intent, Section 1983 itself does not abrogate a state's Eleventh Amendment immunity. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).

As described, Plaintiffs did not contest the DESE Defendants' assertion that their original complaints were subject to dismissal on Eleventh Amendment grounds. Nonetheless, Plaintiffs argue that their amended complaints, which name individual employees of the DESE acting in their official capacities, circumvent such Eleventh

Amendment preclusion.

Plaintiffs' argument, in the court's opinion, is unpersuasive. A private action for money damages pursuant to Section 1983 against a state official in his or her official capacity is, for purposes of the Eleventh Amendment, indistinguishable from an action against the state and is, therefore, barred. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her capacity is not a suit against the official but rather is a suit against the official's office"). Accordingly, given Plaintiffs' demand for damages and the absence of any prayer for injunctive relief in their complaints, the court could readily recommend dismissal of their actions against the DESE Defendants and end its inquiry here.

Plaintiffs, however, raised the specter of injunctive relief in their response to the motion to dismiss, claiming that they "seek relief in the form of a permanent injunction against DESE to preclude future school districts from enlisting aid in an effort to obfuscate a school district's failure to comply with state regulations." (Pls.' Resp. to DESE at 3.) At the motions hearing, Plaintiffs confirmed that they did indeed intend to seek such injunctive relief, vague though it is, even though a prayer to that effect does not appear in their complaints. Accordingly, in order to provide a complete report and recommendation, the court will assume that Plaintiffs' actions against the individual defendants include requests for injunctive relief. As will be made clear below, however, Plaintiffs' arguments still miss the mark.

Plaintiffs rely on *O'Neill v. Baker*, 210 F.3d 41 (1st Cir. 2000), for the general

proposition that "a plaintiff may, subject to a number of caveats, obtain injunctive relief against state officials." *Id.* at 47. According to *O'Neill*, injunctive relief may be available against supervisory state officials in their official capacities if the employees "possessed either the state of mind for the particular constitutional violation or deliberate indifference, and . . . played a causal role in plaintiff's constitutional deprivation." *Id.* Plaintiffs, however, do not specify whether the officials against whom they purportedly seek such relief were acting in a supervisory capacity. Yet even if they were, Plaintiffs fail to allege any facts that might support the causal connection required for a finding of liability. In fact, with one exception, the amended complaints are devoid of any specific reference to named individuals. The one exception concerns a telephone call which took place between Plaintiff Hague's father and Jeffery Wheeler, DESE's Director of Career and Technical Education, during which Wheeler stated that he never received notice of WVS's intent to close the HVAC program. (Hague Compl. ¶ 33.) As is obvious, this sole allegation hardly suggests, let alone establishes, the intent or causal connection to a constitutional violation required by *O'Neill*.

Given the absence here of "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court is unable to draw any "reasonable inference" that Mr. Wheeler - - or any of the other individually named DESE employees for that matter - - is liable for depriving Plaintiffs of any constitutional right. *Iqbal*, 29 S. Ct. at 1949. In short, Plaintiffs' amended complaints do not overcome the DESE Defendants' assertion of sovereign immunity. Accordingly, the court believes, Plaintiffs' claims against the DESE Defendants in Counts One through Three are barred by the

Eleventh Amendment.

2. The IDEA Claim (Count Twelve)

Plaintiffs argue that two of the actions, those of Hague and Dowd, are nonetheless properly within the court's jurisdiction by virtue of the IDEA, the statute invoked in Count Twelve of their complaints. As the parties know, the purpose of the IDEA is to ensure that children with disabilities have the opportunity to receive a free appropriate education. *See* 20 U.S.C. § 1400. Moreover, states are expressly precluded by the IDEA from invoking the protection of the Eleventh Amendment. *See* 20 U.S.C. § 1403(a) ("A state shall not be immune under the 11th Amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter."). The IDEA claims, however, run into a number of other problems which, unfortunately for Hague and Dowd, preclude the exercise of the court's jurisdiction.

In their amended complaints, Hague and Dowd, (hereafter "the IDEA Plaintiffs") assert only that "Defendant" - - it being unclear which defendant - - "knowingly allowed the Westfield School Department, through its employees and city school committee, to abrogate its responsibility to provide special education services." They utterly fail, however, to allege specific facts to support this claim. Thus, the claim is, at best, little more than a "formulaic recitation of the elements of a cause of action" and an inadequate one at that. *Twombly,* 550 U.S. at 555. More to the point, the IDEA Plaintiffs' amended complaints do not articulate specific instances applicable to either one of them, in which IDEA violations occurred, or indicate how any particular

defendant perpetrated any violation of the statute.  Other than noting that in the past

they had received accommodations under the IDEA  (Hague Compl. ¶ 15; Dowd Compl.

¶ 15) and that WVS "failed to provide the necessary accommodations to allow" Dowd to

transfer to Springfield Technical Community College's HVAC program (Dowd Compl. ¶

37), their complaints are devoid of any supporting facts or information and amount to

little more than "bald assertions" and "unsupportable conclusions" insufficient to

support a viable IDEA claim.  *See Campagna*, 334 F.3d at 155.

 Even more problematic is the IDEA Plaintiffs' failure to allege, let alone inform

the court of, any attempt on their part to pursue the IDEA's administrative remedies in

relation to the termination of the HVAC program.  As they must know, the IDEA has

specific administrative remedies which parties must exhaust prior to proceeding with a

claim.  *See* 20 U.S.C. § 1415(1).  *See also Frazier v. Fairhaven School Committee,* 276

F.3d 52, 59 (1st Cir. 2002) (an IDEA cause of action "is carefully circumscribed, and as

a condition precedent to its exercise, an aggrieved party must satisfy the IDEA's

exhaustion provision").  Moreover, parties seeking to circumvent the IDEA's exhaustion

requirement bear the burden of showing an exemption based on futility.  *Id.*  Here, the

IDEA Plaintiffs have not alleged, let alone argued, exhaustion or futility.[1]

 3. <u>Conclusion</u>

 The court finds that Plaintiffs' amended complaints, insofar as they name

individual DESE employees, fail to defeat the DESE Defendants' assertion of sovereign

---

 [1] To the extent that Count Twelve is also directed at the Municipal Defendants, the court recommends that it be dismissed as well for the reasons stated.

immunity.  Accordingly, Counts One through Three should be dismissed for lack of subject matter jurisdiction.  Further, the court finds the IDEA Plaintiffs' attempt to establish federal jurisdiction equally unsuccessful, given not only the insufficiency of their IDEA claims but, as well, their failure to adhere to statutory exhaustion requirements.  Accordingly, Count Twelve of the IDEA Plaintiffs' complaints should be dismissed for lack of subject matter jurisdiction.  Finally, given both the lack of any viable federal claims against the DESE Defendants and the early stage of this litigation, the court recommends dismissing without prejudice Counts Four through Eleven and Twelve (from Curtin's complaint), the remaining state claims, to the extent they may target the DESE Defendants.

B.  The Municipal Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment

As to the Municipal Defendants' motions to dismiss, the court will recommend the dismissal of Counts One and Three but the survival of Count Two.  Relatedly, the court will recommend that supplemental jurisdiction over all but one of the state claims be declined and that the one state claim over which supplemental jurisdiction should be exercised, Count Four, should be dismissed.

1.  Counts One and Three: Section 1983 Claims alleging Due Process violations

Counts One and Three seek damages pursuant to 42 U.S.C. § 1983 for, respectively, the Municipal Defendants' alleged violations of Plaintiffs' due process rights and property interests in education.  Section 1983 provides a cause of action against any person who, "under color of [state law] subjects, or causes to be subjected,

13

any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Liability under Section 1983 accrues if two elements are satisfied: first, a plaintiff must establish that a defendant acted under color of state law and deprived the plaintiff of rights secured by the Constitution or federal law; second, a plaintiff must show that "the defendant's conduct was the cause in fact of the alleged deprivation." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008) (quoting *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997)).

a.  Procedural Due Process: Existence of a Right or Entitlement

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Here, Plaintiffs claim, the property right at issue is the right to a public education as guaranteed under the Massachusetts Constitution.

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Regents of State Colleges v. Roth,* 408 U.S. 564, 577 (1972). If the source of a property interest is state law, as Plaintiffs allege here, "the State may not declare an interest to be non-property for due process purposes if a long-standing practice has established an individual's entitlement to a particular governmental benefit." *Allen v. Board of Assessors of Granby,* 439 N.E.2d 231, 233 (Mass. 1982) (hardship tax

abatement not subject to due process because such abatements were discretionary). A property interest alone, however, does not require the application of due process to its deprivation "if such interest does not rise to the level of an entitlement." *Id.* As the Supreme Court has explained, "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.

(i). Property Right to Education

The alleged property interest at issue here is Plaintiffs' right to a public education. That right derives from the Massachusetts Constitution, which provides that "it shall be the duty of legislatures and magistrates, in all future periods of this Commonwealth, to cherish ... public schools and grammar schools in the towns." Mass. Const. Part II, c. 5 § 2. Plaintiffs assert in their complaints that the cancellation of the HVAC program and the lack of "opportunity to attend school at an alternate venue" deprived them of a "meaningful education." In the alternative, Plaintiffs argue that their participation in the HVAC program for one to three years prior to its closure (depending on the plaintiff) created a vested property interest, in that receipt of such a longstanding benefit created a reasonable expectation that the benefit would continue.

As an initial matter, the court notes that, despite alleging denial of the "opportunity to attend school at an alternate venue" (Hague Compl. ¶ 49), Plaintiffs did, in fact, attend school at alternate venues or remain at WVS after the HVAC program

15

closed.  As best the court understands, Hague transferred to Pathfinder Regional High

School where he entered the HVAC program (Hague Compl. ¶ 39); Curtin completed

the HVAC program at WVS (Curtin Compl. ¶ 19); D'Astous transferred to Gateway

Regional High School where he joined the school's welding program (D'Astous Compl.

¶ 38); and Dowd transferred to the Lower Pioneer Valley Educational Collaborative

School for the second half of his senior year, where he participated in the school's

facilities management program (Dowd Compl. ¶ 38).  It is therefore unclear how

Plaintiffs were denied the opportunity to attend schools at alternate venues.  Not only

has each Plaintiff continued to attend school in Massachusetts, but all of them have

either graduated or are on track to graduate.

Relatedly, the court notes that Plaintiffs do not allege a deprivation of education

such that they were wholly deprived of access to an education, as is the case in

instances where students are suspended or expelled for disciplinary reasons.  *See,*

*e.g., Goss v. Lopez*, 419 U.S. 565, 574 (1975) (property interest in education may not

be taken away for misconduct without adherence to due process procedures).  Rather,

Plaintiffs appear to argue that the right to a public education in Massachusetts includes

the right to participate in a specific program, in this instance the HVAC program at

WVS.  The court disagrees.

The right to a public education in Massachusetts has been characterized by the

Supreme Judicial Court as the right to an "adequate" education.  *McDuffy v. Secretary*

*of Executive Office of Educ.*, 615 N.E.2d 516, 545 (Mass. 1993) (Part II, c. 5 § 2 of the

Massachusetts Constitution imposes a duty on legislatures and magistrates to provide

16

an adequate education).  To be sure, the Supreme Judicial Court has set forth "broad

guidelines" for skills an educated child must possess, including,

> sufficient training or preparation for advanced training in
> either academic or vocational fields so as to enable each
> child to choose and pursue life work intelligently, and
> sufficient level of academic or vocational skills to enable
> public school students to compete favorable with their
> counterparts in surrounding states, in academics or in the
> job.

*McDuffy*, 615 N.E.2d at 554 (quoting *Rose v. Council for Better Educ., Inc.*, 790 S.W.2d

186, 212 (Ky. 1989)).  Those guidelines, however, do little to advance Plaintiffs'

argument that they are entitled to participate in a specific vocational program.  If

anything, the SJC determined only that it is the responsibility of legislators, not the

judicial branch, to "define[ ] the specifics of their State's educational systems."  *Id.* at n.

9.

　　As relevant here, the scheme for vocational schools in Massachusetts, as

determined by the legislature, simply provides the opportunity for residents in towns

without vocational schools to attend a vocational school in another district with

permission of the Commissioner of Education.  Mass. Gen. Laws ch. 74  § 7.  It also

provides that a student admitted to another school district's vocational program is

entitled to have his or her tuition, as well as the costs of transportation in certain

circumstances, paid for by his or her home district.  *Id.* at § 8-8a.

　　The Supreme Judicial Court interpreted these provisions as follows: "although

the Legislature did not expressly provide an entitlement to vocational education in

Mass. Gen. Laws ch. 74, § 7, the legislative scheme may require the provision of free vocational education to qualified students." *Ciaramitaro v. Superintendent of Schools of Saugus,* 551 N.E.2d 24, 27 (Mass. 1990). The court held, however, that a school district was not liable for failing to pay for a student wait-listed at the district's vocational school to attend vocational school in another district. *Id.* The court reasoned, based on the statute's language, that in light of the existence of a vocational school within the school district, the district did not have to pay for the student to go elsewhere. Thus, as the Municipal Defendants argue, the right to an adequate education does not include, or require, the right to participate in a *particular* vocational program such as HVAC. Plaintiffs may wish that it were otherwise, but their "property right" to an education is quite circumscribed. In sum, the right to participate in a specific program at a specific school has not been recognized as an established right by either the legislature or the Massachusetts courts, and Plaintiffs have not convinced this court that the concept of property rights should be extended in the manner they wish.

(ii). Property Interest Based on Receipt of a Long-standing Benefit

Plaintiffs argue in the alternative that their receipt of a long standing benefit, defined by them as "eligibility in the study of a work trade," supports their reasonable expectation that the benefit would continue and, as such, amounts to a property interest subject to due process protection. In essence, Plaintiffs argue that their expectation of and reliance on the continued receipt of an HVAC education stems from Mass. Gen. Laws. ch. 74 *et seq.* As described, however, chapter 74 does not create an entitlement

to a specific vocational program.

Plaintiffs, in fact, appear to acknowledge that the HVAC program, as is true with similar programs, is subject to budgetary limitations and the discretion of the Westfield School Committee. They also appear to agree that a student's participation in the HVAC program is itself discretionary, based on performance, grades, attendance, behavior and aptitude, and subject to an exploratory program during a student's freshman year. That said, Plaintiffs need to accept as well, no doubt reluctantly, that the discretionary nature of the program "negates any claim of entitlement which would mandate the protection of the due process clause." *School Committee of Hatfield v. Board of Ed.,* 372 Mass. 513 (1977) (upholding as discretionary State Board of Education's decision that proposed construction of a school building was not in town's best interests and not subject to judicial review). In short, Plaintiffs' participation in the HVAC program was not a protected property right subject to due process protection.

This is not to say, of course, that Plaintiffs were not sorely disappointed by the elimination of the HVAC program. They were. It is simply to say that, in the court's opinion, the students did not have a constitutionally protected property right upon which to ground their due process claims.[2]

b. The Process Due

---

[2]Plaintiffs also rely on the WVS student handbook and manual, but they have failed to direct the court to any guideline or guarantee therein which supports their assertion that participation in the HVAC program was an entitlement upon which they could rely.

Even if Plaintiffs were somehow found to have a protected property interest in completing the HVAC program, the elimination of the program, in the court's view, is not the kind of action that required a pre-deprivation hearing. Plaintiffs' arguments notwithstanding, hearings are usually required only prior to disciplinary determinations due to the resemblance such determinations have to "traditional judicial and administrative fact finding." *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 88-89 (1979). *See Goss v. Lopez*, 419 U.S. 565, 579 (1975) (a hearing, or the offer of one, is necessary when a school takes serious disciplinary action against a student). That is not the situation here.

The Supreme Court's decision in *Horowitz* is particularly instructive in this regard. The Court held that academic decisions, unlike disciplinary decisions, should be left to academic channels and do not require a hearing as a matter of constitutional right. *Horowitz*, 435 U.S. at 88. In coming to this conclusion, the Court distinguished disciplinary decisions from those that are academic in nature:

> In *Goss*, this Court concluded that the value of some form of hearing in a disciplinary context outweighs any resulting harm to the academic environment. Influencing this conclusion was clearly the belief that disciplinary proceedings, in which the teacher must decide whether to punish a student for disruptive or insubordinate behavior, may automatically bring an adversary flavor to the normal student-teacher relationship. The same conclusion does not follow in the academic context.

*Id.* at 90. Here, too, the decision to eliminate the HVAC program can only be characterized as an academic decision made by school administrators. As importantly,

Plaintiffs here, unlike those in *Goss* or *Horowitz*, continued to receive a public education, albeit without further participation in the HVAC program they liked so much. In short, Plaintiffs were not entitled to the kind of due process protection required when the wholesale deprivation of a student's right to education is at risk.

In this vein, the court also notes that Plaintiffs were not left in the dark about the decision. As Plaintiffs acknowledge, they were notified of the HVAC program closure (although exactly when each party received notice is disputed) and, as well, had notice of a School Committee meeting at which the closure was to be discussed. In addition, Plaintiffs had an opportunity to object to the DOE before the HVAC program closed, as well as the statutory right to appeal the program's closure to Superior Court pursuant to Mass. Gen. Laws. ch. 30A. If anything, these procedures provided a form of due process, albeit not the process presently invoked by Plaintiffs. *See Goss*, 419 U.S. at 577 ("[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.") (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)).

In fact, as far as the court understands, two of the plaintiffs, Hague and D'Astous, filed complaints with DOE regarding the closure of the HVAC program. DOE responded to both complaints and required WVS to take certain corrective actions. The DOE also provided information about the availability of mediation and/or a hearing through the Bureau of Special Education Affairs. (Weisgerber Aff. Exs. 4 and 5.) To the court's knowledge, none of the Plaintiffs followed through with either option, nor did

any of them avail themselves of an appeal to Superior Court.[3]

In any event, given the academic nature of the decision to close the HVAC program and the alternative channels through which Plaintiffs could have, and in some cases did, object, it is this court's opinion that Plaintiffs were not constitutionally entitled to a formal notice and pre-termination hearing they now independently claim.

## 2. Count Two: Violation of Free Speech and Assembly Rights

Plaintiffs allege that their First Amendment rights to free speech and assembly were violated when they were "denied [their] right to meaningfully attend and speak at the public school committee meeting held on October 9, 2007." In particular, Plaintiffs allege that they were met with "threats, coercion and intimidation" at the School Committee meeting, that "three Westfield police officers had been hired to essentially prohibit the parents from entering the room and speaking on behalf of their children," and that "parents and supporters of the program . . . were prohibited from attending the entire meeting and were only allowed to enter the meeting one at a time to make a statement." (Comp. ¶ 34.) Based on these allegations, Plaintiffs assert that the Municipal Defendants intended to "chill" their right to free speech.[4]

_____

[3]Although the DOE complaints are not part of Plaintiffs' complaints, they were provided by Defendants as official records, "the authenticity of which are not disputed by the parties." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citing *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n. 3 (1st Cir. 1991)).

[4]Hague and D'Astous also appear to claim, in their Opposition to the Municipal Defendants' Motion to Dismiss (Doc. No. 27), that their First Amendment rights were violated because they filed a complaint with DOE and, in retaliation, the Municipal Defendants made misrepresentations to DOE and failed to inform their parents of alternative placement programs. Retaliation, however, is not asserted in Count Two,

As the parties initiating these actions, Plaintiffs bear the burden of "put[ting] adequate facts in the record from which a court reasonably could conclude that [they] [were] among those whose speech was potentially chilled." *Osediacz v. City of Cranston*, 414 F.3d 136, 143 (1st Cir. 2005). And "where a chilling effect is speculative, indirect or too remote, finding an abridgement of First Amendment rights is unfounded." *Sullivan v. Carrick*, 888 F.2d 1, 4 (1st Cir. 1989) (defendant board member could not be held liable for violation of Plaintiff's First Amendment rights absent showing that his speech was in fact chilled or intimidated by member's action).

Here, while Plaintiffs fail to cite particular threats made to them at the meeting, they do assert that "three police officers had been hired to essentially prohibit the parents from entering the room" and that "parents and supports [sic] of the program were [only] allowed to enter one at a time and make a statement." (D'Astous Compl. ¶¶ 31 and 32.) Granted, as the Municipal Defendants point out, Plaintiffs' complaints acknowledge that the school board did hear from them individually, but Plaintiffs maintain nonetheless that they were unable to attend the entire meeting and could only enter to speak one at a time. These assertions, in the court's opinion, raise viable First Amendment claims.

---

their First Amendment claim; Count Two alleges only that Plaintiffs' First Amendment rights were violated when they were denied the opportunity to meaningfully attend and speak at the School Committee meeting. Because Plaintiffs did not properly include this claim in their amended complaints, the court will not address it. *See Artuso v. Vertex Pharmaceuticals, Inc.*, 637 F.3d 1, 8 (1st Cir. 2011) ("a plaintiff whose complaint does not state an actionable claim has no license to embark on a fishing expedition in an effort to discover a cause of action").

To be sure, "even protected speech is not equally permissible in all places and at all times," *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, 473 U.S. 788, 799 (1985), and the appropriateness of any imposed restrictions must be considered in the context of the forum in which they are implemented. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n.,* 460 U.S. 37, 44 (1983) ("The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."). The application of those standards, however, must necessarily be left to another day. For present purposes, Plaintiffs have asserted First Amendment claims of speech and assembly which, in the court's opinion, are plausible enough to survive the Municipal Defendants' motions to dismiss.

Still, Plaintiffs' claims, based as they are on the restrictions imposed at the October 9, 2007 meeting, only implicate those in charge of the meeting, *i.e.*, the Town itself and members of the School Committee, and as against them, the court believes, Count Two should remain.[5]  Granted, the Municipal Defendants also argue, broadly, that these individually named defendants are entitled to qualified immunity.  The court, however, is unable to make a recommendation with regard to that defense, given the scant details addressing the issue and the early stage of litigation.  *See Giragosian v. Bettencourt*, 614 F.3d 25 (1st Cir. 2010) ("It is not always possible to determine before

_____

[5]In addition to the Town of Westfield, this includes Michael Boulanger as Chairman, and Mary Ann Cleland, Laura Maloney, Kevin Sullivan, Robert Kapinos, Mary Beth Ogulewicz Sacco and Heather Sullivan, as members of the Westfield School Committee.

any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity defenses at the summary judgment stage.").

As to Plaintiffs' attempt to implicate other Municipal Defendants - - by alleging that the "[M]unicipal [D]efendants also concocted a scheme to prevent HVAC students and their parents from assembling together at the meeting so as to all for them to build support and encouragement but rather forced them out of the public meeting and allowed them to appear and make statements individually" - - that attempt, in the court's view, is not only convoluted but entirely unsupported.  Thus, to the extent Plaintiffs' First Amendment claims are directed at Weisgerber, McDowell, York, Wagner, Pippin and Alvira, it is the court's recommendation that they be dismissed.

IV.  STATE LAW CLAIMS

The Municipal Defendants ask the court to exercise pendent jurisdiction over Plaintiffs' state law claims and, in turn, to dismiss them.  The power to exercise pendent jurisdiction is a "doctrine of discretion," not right.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  Given the court's recommendation that all but one of Plaintiffs' federal claims be dismissed and, more importantly, the fact that all but one of Plaintiffs' state law claims arise from facts associated with the dismissed federal claims, the court will recommend declining the exercise of pendent jurisdiction over Counts Five through Eleven and, in Curtin's action, Count Twelve.  *Id.* at 726 ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

If adopted, this recommendation would leave only one state law claim, Count Four, Plaintiffs' MCRA claim against the Municipal Defendants, which alleges interference with their "rights to free speech and a public education" through threats, intimidation and coercion. Because this claim has a nexus to the remaining federal claim, Count Two, the court recommends exercising jurisdiction over it but, for the reasons which follow, dismissing it nonetheless.

As an initial matter, Plaintiffs again fail to identify the particular defendants against which Count Four is leveled. Assuming that Count Four is directed at *all* the Municipal Defendants, the court recommends dismissal against all such defendants acting in their official capacities in light of the well-established principle that "a municipality is not a 'person' covered by the MCRA." *Howcroft v. City of Peabody*, 747 N.E.2d 729, 744 (2001).

Such dismissal would leave only Weisgerber and McDowell, both of whom were sued in their individual capacities, as defendants to Count Four. Plaintiffs, however, do not allege any facts specifically tying either Weisgerber or McDowell to the MCRA claim. With regard to the October 9, 2009 meeting, Plaintiffs' complaints state only that "the meeting room had been filled with unconcerned and unconnected supporters of defendant Hillary Weisgerber" and that, "at the conclusion of the meeting and without discussion or deliberation, the defendant Superintendent Thomas McDowell read a prepared statement as to the closure program and procedures which had been approved by defendant the Massachusetts Department of Education on October 3, 2009." (Hague Compl. ¶¶ 34, 36.) Clearly, these allegations do not aver any

interference or attempted interference with rights conferred by Federal or Massachusetts law by means of threats, intimidation, or coercion by either Weisgerber or McDowell.  *See* Mass. Gen. Laws ch. 12, §§ 11H, 11I.  Moreover, given the lack of any discernible connection between Weisgerber and McDowell and the conduct of the meeting by the Westfield School Committee itself, the court recommends that the Municipal Defendants' motions to dismiss Count Four be allowed.

## V. CONCLUSION

For the foregoing reasons, the court recommends, first, that the DESE Defendants' motions to dismiss be ALLOWED in their entirety.  These motions are Document No. 13 in Hague's complaint, Document No. 12 in Curtin's complaint, Document No. 12 in D'Astous's Complaint, and Document No. 12 in Dowd's complaint.

Second, the court recommends that the Municipal Defendants' motions to dismiss be ALLOWED as to Counts One and Three.  These motions are Document No. 15 in Hague's complaint, Document No. 14 in Curtin's complaint, Document No. 14 in D'Astous's complaint, and Document No. 14 in Dowd's complaint.  Third, the court recommends that, as to Count Two, the Municipal Defendants' motions to dismiss be ALLOWED as to Defendants Weisgerber, McDowell, York, Wagner, Pippin and Alvira but DENIED as to Defendants Town of Westfield, Michael Boulanger as Chairman of the Westfield School Committee and Mary Ann Cleland, Laura Maloney, Kevin Sullivan, Robert Kapinos, Mary Beth Ogulewicz Sacco and Heather Sullivan in their official capacities as members of the Westfield School Committee.  Fourth, the court

27

recommends that supplemental jurisdiction not be exercised as to the Municipal

Defendants' state claims in Counts Five through Eleven and, in Curtin's Complaint,

Count Twelve.  Fifth, the court recommends that jurisdiction be exercised over Count

Four - - the Massachusetts Civil Rights Act claim which relates to the remaining federal

claim in Count Two - - but that the Municipal Defendants' motions to dismiss Count

Four be ALLOWED as to all defendants. [6]

DATED: July 26, 2011

                      /s/  Kenneth P. Neiman
                      KENNETH P. NEIMAN
                      U.S. Magistrate Judge

---

[6] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.